UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCY WELLINGTON,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, et al.,

                              Defendants.

Case No. 1:24-cv-08743 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Mercy Wellington ("Plaintiff" or "Wellington") brings this action *pro se* against Defendants City of New York (the "City" or "New York City"), New York City Police Department (the "NYPD"), Lt. Darryl E. Fontaine ("Fontaine"), Police Officer Rawsan A. Jackson ("Jackson"), Police Officer Kyle M. LaGuardia ("LaGuardia"), Police Officer Kelvin Villegasalmazo ("Villegasalmazo"), Police Officer Rustam Mukhutdinov ("Mukhutdinov"), Perry Perlmutter ("Perlmutter"), Angela Mortimer ("Mortimer"), and Lynn Gore ("Gore") (collectively the "Defendants"), alleging that Defendants' conduct in relation to her eviction and arrest violated state and federal laws.  Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1]

For the following reasons, the Court GRANTS the motions to dismiss.

---

[1] The City, Perlmutter, Mortimer, Gore, Jackson, LaGuardia, Villegasalmazo, and Mukhutdinov filed a joint motion to dismiss, *see* Dkt. 45, and Fontaine subsequently filed a motion to dismiss, Dkt. 83.

## BACKGROUND

The following facts are taken from the Amended Complaint and are accepted as true for purposes of the present motion. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### I.    Factual Background

This action arises out of Wellington's eviction ("log out"), from the homeless shelter Harmonia and her subsequent arrest on August 15, 2023. Wellington, a 54-year-old woman experiencing homelessness, resided at Harmonia adult homeless shelter with her three children from August 14, 2022, to August 15, 2023. *See* Dkt. 37 ("Amended Complaint" or "Am. Compl.") ¶ 25; *id.* Ex. A ¶ 28. Harmonia is operated by Services for the Underserved ("S:US"), a private entity, which coordinates with the New York City Department of Homeless Services ("DHS"). Am. Compl. ¶ 25.

The events leading to Wellington's eventual log out and arrest began on August 12, 2023. On that day, a Harmonia staff member informed Wellington that she had been logged out because she had not signed the night sheet as mandated by Harmonia's rules. *Id.* ¶ 26. Following a discussion with the staff, she was permitted to remain at Harmonia. *Id.* ¶ 30. Then, on August 14, 2023, Harmonia staff told Wellington that she needed to vacate the premises. *Id.* ¶¶ 32-33. Wellington again refused to leave, and went to speak with Gore, an Administrative Assistant at Harmonia. *Id.* ¶ 34. Gore informed Wellington that Nelly Vasquez, a non-defendant DHS official, emailed the Harmonia staff that Wellington had been logged out. *Id.* ¶¶ 34-35. After this conversation, Wellington emailed Vasquez requesting clarification regarding the log out. *Id.* Vasquez responded the next day, informing Wellington that she had been properly logged out from Harmonia. *Id.* ¶ 35.

On August 15, 2023, Wellington went to speak with Mortimer, the program director at Harmonia, to ask why she had been logged out. *Id.* ¶ 37. Mortimer explained that Wellington had been logged out because the shelter was not receiving funds for Wellington and her children to stay at Harmonia. *Id.* While Wellington was speaking with Mortimer, police officers LaGuardia, Villegasalmazo, and Mukhutdinov arrived at Harmonia. *Id.* ¶¶ 38-39. Upon their arrival, Mortimer told the officers that Wellington had been logged out of the shelter but still refused to leave. *Id.* ¶ 39. The officers investigated the situation, speaking with Wellington and Mortimer. *Id.* ¶¶ 39-41. Harmonia staff provided the officers with documentation showing that Wellington was in violation of the DHS rules for staying in the shelter. *Id.* ¶ 42. After reviewing the documents, the officers told Wellington that she was trespassing and needed to leave Harmonia. *Id.* ¶ 43. Wellington then asked to speak with the officers' supervisor, Fontaine, who arrived shortly thereafter. *Id.*

After a private conversation with Mortimer, Fontaine told Wellington that he had been shown documentation indicating that she was logged out and had to leave the premises. *Id.* ¶ 44. Wellington asked one of her children to contact the office of a local councilman and Fontaine then ordered the other officers to arrest Wellington. *Id.* ¶ 47-48. Wellington again refused to comply, so one of the officers handcuffed her and escorted her to a police car. *Id.* ¶¶ 49-50. While in the police car, Wellington asked Fontaine to loosen her handcuffs because "it was really tight on her wrist." *Id.* ¶ 53. Fontaine refused, saying that "it wasn't meant to feel good" and slammed the car door. *Id.* Wellington was then taken to a local precinct and held in a jail cell for 1-2 hours. *Id.* ¶ 57.

Wellington subsequently filed multiple state court and administrative suits, including requesting a State Fair Hearing on August 21, 2023, *id.* ¶ 71, filing an illegal lockout case in New York City Civil Court on August 28, 2023, *id.* ¶ 72, filing a subsequent action in New York

3

State Supreme Court challenging the log out, Dkt. 47-4, and filing a claim with the Comptroller's Office on September 25, 2023, Am. Compl. ¶ 73.  The New York City Civil Court case was dismissed for lack of subject matter jurisdiction on September 13, 2023.  Dkt. 47-1.[2]  On November 17, 2023, the New York State Supreme Court dismissed Wellington's claims.  Dkts. 47-3, 47-4 (transcript of state court hearing and ruling).  Wellington does not indicate the outcome of the comptroller decision.

## II.    Procedural Background

Wellington commenced this action on November 13, 2024, naming 22 defendants.  *See generally* Dkt. 1 ("Compl.").  On January 7, 2025, the Court dismissed several defendants from the suit on the grounds that they were not suable entities, ordered the New York City Law Department to identify the John Doe defendants named in the suit, and granted Wellington permission to proceed *in forma pauperis*.  Dkt. 6.  In response to this order, the New York City Law Department identified Fontaine, Jackson, LaGuardia, Villegasalmazo, and Mukhutdinov as the responding officers.  Dkt. 24.

Wellington filed the Amended Complaint on July 9, 2025, bringing federal and state law claims against the City, the NYPD, Fontaine, Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, Perlmutter, Mortimer, and Gore.  *See generally* Am. Compl.  Wellington brings seventeen different causes of action against these ten defendants.  *See* Am. Compl. ¶¶ 75-171.  The causes of action included federal law claims brought under 42 U.S.C. § 1983, *see id.* ¶¶ 75-101, 120-133; a state constitutional claim, *see id.* ¶¶ 158-163; and claims alleging violation of

---

[2] The Court may take judicial notice of these state court decisions.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."); *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) ("The district court did not err in considering [an] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice.").

local city laws, *see id.* ¶¶ 134-157, and state common law, *see id.* ¶¶ 102-119, 164-168. Wellington also brings claims for "transitional homelessness," "chronic homelessness," and "duress." *Id.* ¶¶ 169-171. On July 22, 2025, the Court ordered the U.S. Marshals to serve the Amended Complaint on the Defendants. *See* Dkt. 40. Prior to filing the present motion, all Defendants except for Fontaine had either been served or waived service. Dkt. 78.

On August 25, 2025, all Defendants other than Fontaine filed a joint motion to dismiss the Amended Complaint in its entirety. Dkt. 45; Dkt. 47; Dkt. 48 ("Br."). These Defendants subsequently requested that the Court stay discovery pending resolution of the motion to dismiss, *see* Dkts. 55, 57, which the Court granted on September 24, 2025, *see* Dkt. 60. Wellington filed her opposition on October 7, 2025, *see* Dkt. 65 ("Opp."), and Defendants filed a reply on November 20, 2025, *see* Dkt. 77 ("Reply").

Fontaine waived service on October 15, 2025. *See* Dkt. 68. He then filed his motion to dismiss on February 5, 2026. Dkt. 83; Dkt. 85 ("Fontaine Br."). Wellington filed her opposition on March 24, 2026, Dkt. 88 ("Fontaine Opp."), and Fontaine replied on April 8, 2026, Dkt. 89 ("Fontaine Reply"). Both motions are fully briefed.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts as true all non-conclusory allegations of fact and "draw[s] all reasonable inferences in the [nonmovant]'s favor."[3] *Francis v. Kings Park Manor, Inc.*, 992

---

[3] Defendants ask the Court to disregard the declarations of Jordan Wilson, *see* Dkt. 62, Nyah Wilson, *see* Dkt. 63, and Ryan Wilson, *see* Dkt. 64, filed in support of Wellington's opposition to the motion to dismiss. The Court declines to do so. When deciding a motion to dismiss a *pro*

F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016)).  But a court need not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[T]he court's task is to assess the legal feasibility of the [allegations]; it is not to assess the weight of the evidence that might be offered on either side[.]" *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a pleading states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Where a plaintiff proceeds *pro se*, as in this case, the Court construes the pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interprets them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis and citation omitted).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party 'from compliance with relevant rules of procedural and substantive law.'" *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (italics added) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009)).

## DISCUSSION

Defendants seek to dismiss all the federal claims contained in the Amended Complaint because the NYPD is a non-suable entity, the State of New York is entitled to immunity, and the pleadings do not allege claims under Section 1983 against Perlmutter, Mortimer, Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, the City, and Fontaine.  *See* Br. at 2; Fontaine Br. at

---

*se* complaint, the court "may consider factual allegations made by a *pro se* party in [her] papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

1.[4]  Defendants also argue that the Court should dismiss the state law claims on the merits or at least decline to assert supplemental jurisdiction.  Br. at 23-24.  For the following reasons, the Court dismisses all of the federal claims and declines to exercise supplemental jurisdiction over the state claims.

## I.  Nonexistent Legal Authority

Before this Court begins its analysis, it must address Wellington's pervasive citations to non-existent authority in her briefing.  This is unacceptable.

Defendants point out that Wellington's initial opposition brief contains six "purported authorities that, on information and belief, do not appear in any legal database."  Reply at 1-2. The Court was likewise unable to locate these authorities, which seem to be cases that were "hallucinated" using an artificial intelligence tool.  "Without question, it is improper and unacceptable for litigants — including *pro se* litigants — to submit 'non-existent judicial opinions with fake quotes and citations.'"  *Anonymous v. New York City Dep't of Educ.*, No. 24-cv-04232 (JLR), 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024) (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)); *see also Kotler v. Jubert*, 986 F.3d 147, 156 (2d Cir. 2021) ("[S]olicitude for *pro se* litigants does not require [a court] to excuse failure to comply with understandable procedural rules[.]"); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995) (noting that it is "especially true in civil litigation" that *pro se* litigants must learn and comply with procedural rules).

Sanctions may be imposed for submitting false and nonexistent legal authority to the Court.  *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (per curiam) (referring

---

[4] Although Fontaine filed a separate motion to dismiss, his arguments echo those made by the other police officer defendants.  *Compare* Br. at 9-21, *with* Fontaine Br. at 4-17.  Accordingly, the Court analyzes the two motions together, unless otherwise noted.

attorney to Court's Grievance Panel where her brief, drafted in reliance on ChatGPT, included citations to fake opinions); *Mata*, 678 F. Supp. 3d at 459-66 (sanctioning counsel for similar conduct). That said, the Court is mindful of its "obligat[ion] to afford a special solicitude to *pro se* litigants." *Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023) (citation omitted). Therefore, the Court declines to sanction Plaintiff at this time and instead warns Plaintiff that any further misconduct in the future will not be tolerated.

## II.    Claims against NYPD and the State of New York

Moving to the merits, the Court will dismiss all claims against Defendant NYPD because it is not a suable entity. The New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. "Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued." *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008). Thus, courts have repeatedly held that the NYPD is a "non-suable agency of the City." *See, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Trujillo v. City of New York*, No. 14-cv-08501 (PGG), 2016 WL 10703308, at *5-6 (S.D.N.Y. Mar. 29, 2016) (collecting cases and holding that "[s]ince the NYPD is a non-suable entity, all claims against the NYPD will be dismissed"), *aff'd,* 696 F. App'x 560 (2d Cir. 2017) (summary order); *E. Coast Novelty Co. v. City of New York*, 781 F. Supp. 999, 1010 (S.D.N.Y. 1992) ("As an agency of the City, the [NYPD] is not a suable entity."). Wellington does not identify any authority to the contrary or even address this argument in her opposition brief. Accordingly, all claims against Defendant NYPD are dismissed.

Furthermore, Wellington's claim against the State of New York, Am. Compl. ¶¶ 129-33, must be dismissed because the State of New York is entitled to sovereign immunity. "'[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogated the states' Eleventh Amendment immunity[.]'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration adopted) (quoting *Woods v. Rondout Valley Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress "d[id] not abrogate sovereign immunity" in enacting 42 U.S.C. § 1983. *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 138 (2d Cir. 2025) (collecting cases). Plaintiff's Section 1983 claims against the State of New York are therefore barred by the Eleventh Amendment and are dismissed, just as the Court previously dismissed this claim in the context of the initial Complaint. *See* Dkt. 6 at 3.

## III.    Federal Law Claims Against the Remaining Individual Defendants

Wellington brings several claims under 42 U.S.C. § 1983 against the remaining Defendants. *See* Am. Compl. ¶¶ 75-101, 120-133. Under Section 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. "In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

9

Defendants argue the Amended Complaint does not plausibly allege that (1) Perlmutter, Mortimer, and Gore, who worked for S:US, acted under the color of state law, Br. at 21-22; (2) officers Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine's conduct violated Wellington's constitutional rights, Br. at 9-21; Fontaine Br. at 4-15; or (3) the City had a custom or policy that caused a deprivation of her constitutional rights, necessary for any *Monell* claim against a municipality, Br. at 5-6.  The Court agrees.

### A.      Perlmutter, Mortimer, and Gore

First, the Amended Complaint does not plausibly allege that Perlmutter, Mortimer, and Gore, employees of the private entity S:US, acted "under color of state law." *Pitchell*, 13 F.3d at 547.  To act under color of state law, the defendant must "have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  "In analyzing whether a private entity acts under color of state law for purposes of § 1983," a court begins "'by identifying the specific conduct of which the plaintiff complains,' rather than the general characteristics of the entity." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). For purposes of Section 1983, a private entity acts under color of state law "(1) when the entity acts pursuant to the coercive power of the state or is controlled by the state; (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies; or (3) when the entity has been delegated a public function by the state." *Id.* (citation modified) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Here, the parties do not dispute that Perlmutter, Mortimer, and Gore were employed by the private entity, S:US.  Br. at 21; Opp. at 12, and their relevant conduct included logging out Wellington and then seeking police assistance.  These are not actions "fairly attributable" to the state.  *Fabrikant*, 691 F.3d at 207.  There are no facts in the Amended Complaint that plausibly allege that these actions were compelled by the City.  *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.").  Moreover, allegations that S:US relied on government funding or was regulated by DHS log out rules do not mean its employees acted under state law.  *Fabrikant*, 691 F.3d at 207 ("[A] private entity does not become a state actor for purposes of § 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003))); *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981) (holding that a public defender paid for by public funding was not a state actor because, "[e]xcept for the source of payment," the defendant and his clients' relationship was "identical to that existing between any other lawyer and client").  Lastly, courts have recognized that "the provision of low-cost supportive housing is not a 'public function' within the meaning of section 1983 because 'the provision of housing, for the poor or for anyone else, has never been the exclusive preserve [of] the state.'"  *George v. Pathways to Housing, Inc.*, No. 10-cv-09505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) (collecting cases) (quoting *Young v. Halle Hous. Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001)).

Wellington claims that Perlmutter, Mortimer, and Gore acted under color of state law because the Amended Complaint alleges that they "acted jointly with government officials in violating [Wellington's] constitutional rights."  Opp. at 13.  Specifically, she argues that "Gore

produced falsified emails from Department of Homeless Services stating that [Wellington] was logged out" and "Mortimer contacted the New York Police Department who then" violated her constitutional rights. *Id.* at 12-13. But the Amended Complaint does not allege that Gore produced falsified emails, and, in any event, producing a false email does not establish that the S:US Defendants acted under color of state law. Moreover, "[m]erely calling the police is insufficient to give rise to § 1983 liability, insofar as calling the police, by itself, does not establish that the private actor and the police acted jointly." *See Lurch v. City of New York*, No. 19-cv-11253 (AJN), 2021 WL 1226927, at *4 (S.D.N.Y. Mar. 31, 2021) (collecting cases); *see also Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 228 (E.D.N.Y. 2010) (holding that a defendant did not act under the color of state law when she reported plaintiff to the police).

Wellington cites to *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) for the proposition that private individuals act under color of state law "in certain circumstances such as directing law enforcement to arrest a resident or falsifying documents used by police — if such conduct can be shown to be fairly attributable to the government." Opp. at 12. *Rendell-Baker* does not support this proposition. In *Rendell-Baker*, the Supreme Court held that a private school that relied on public funds did not act under color of state law when it discharged an employee, because the decision was not "fairly attributable to the State." 457 U.S. at 840-43. It provides no support for the assertion that falsifying an email or calling the police constitutes acting under color of state law. Thus, the federal claims against Perlmutter, Mortimer, and Gore must be dismissed because the Amended Complaint does not plausibly allege that they acted "under color of state law." *Pitchell*, 13 F.3d at 547.

### B.    Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine

Next, the Amended Complaint does not plausibly allege that the conduct of the NYPD officers Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine deprived Wellington

12

of a constitutional right.  Wellington alleges that the five officers violated her Fourth Amendment rights by falsely arresting her, using excessive force, and failing to intervene to prevent such deprivations.  *See* Am. Compl. ¶¶ 87-101, 120-33.  Unlike Perlmutter, Mortimer, and Gore, there is no dispute that these five defendants acted under color of state law since they were police officers effectuating an arrest.  *See, e.g.*, *Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985) ("[T]here is no question that the arresting officers acted under color of state law[.]"); *Adams v. City of New York*, No. 08-cv-05263 (JGK), 2010 WL 743956, at *4 (S.D.N.Y. Mar. 2, 2010) (finding that there was "no dispute that the police officers who arrested the plaintiff did so under the color of state law").  However, even liberally construed, the Amended Complaint fails to adequately allege that the five officers' conduct deprived Wellington of her "rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Pitchell*, 13 F.3d at 547.

### 1. False Arrest

To start, the Amended Complaint does not allege a constitutional deprivation by false arrest because the facts show that the officers had probable cause to arrest Wellington.  "In analyzing [Section] 1983 claims for unconstitutional false arrest," the Court "generally look[s] to the law of the state in which the arrest occurred."  *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim."  *Id.* at 152; *see also Swanhart v. Jackson*, No. 20-cv-06819 (NSR), 2023 WL 4534638, at *7 (S.D.N.Y. July 13, 2023) (explaining that a Section 1983 claim for false arrest may be dismissed if "[the] plaintiff's version of events . . . establish[es] probable cause to arrest" (first alteration in original) (quoting *Jones v. Maples/Trump*, No. 98-cv-07132 (SHS), 2002 WL 287752, at *6 (S.D.N.Y. Feb. 26, 2002)). "An officer has probable cause to arrest when he or she has 'knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Jaegly*, 439 F.3d at 152 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "'When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it,' as 'probable cause does not require absolute certainty.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted) (alteration adopted) (first quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); and then quoting *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)). "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness[.]" *Id.* (alteration adopted) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "In cases where a plaintiff attempts to plead false arrest despite the existence of a complaining victim or witness, the plaintiff must, at the very least, allege facts tending to show that the victim's veracity should have been questioned." *Guerrero v. City of New York*, No. 12-cv-02916, 2013 WL 673872, at *4 (S.D.N.Y. Feb. 25, 2013); *see also Khaja–Moinuddin v. City of New York*, No. 09-cv-00646 (CBA) (LB), 2010 WL 3861003, at *5-6 (E.D.N.Y. Sept. 28, 2010) (dismissing a claim for false arrest because the complaint alleged probable cause for the arrest).

Drawing all inferences in favor of Wellington, the facts alleged in the Amended Complaint establish that Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine had probable cause to arrest Wellington for trespassing. *See Cabble v. City of New York*, No. 04-cv-09413 (LTS), 2009 WL 890098, at *5 (S.D.N.Y. Mar. 30, 2009) ("Even where factual disputes exist, . . . courts have held that a Section 1983 claim may still be dismissed if the plaintiff's own version of events in the [c]omplaint establishes a probable cause basis to arrest."). Under New York law, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or

14

upon premises." N.Y. Penal Law § 140.05. Jackson, LaGuardia, Villegasalmazo, and Mukhutdinov arrived at Harmonia in response to a call claiming that an individual was "refusing to leave." Am. Compl. ¶ 39. After they arrived, the officers interviewed Wellington. *Id.* ¶ 40. The Harmonia staff showed the officers documents showing "that [Wellington] was in violation of DHS . . . rules and requirements for staying in the shelter." *Id.* ¶ 42. When Fontaine arrived, he spoke with Mortimer regarding the situation. *Id.* ¶ 44. The statements of victims and witnesses, along with documentation, is enough "reasonably trustworthy information of facts and circumstances to warrant a person of reasonable caution in the belief that" Wellington was trespassing. *Jaegly*, 439 F.3d at 152.

In her opposition, Wellington argues that probable cause did not exist because Defendants "failed to conduct a reasonable investigation, and . . . any information relied upon was insufficient, unreliable, [and] knowingly false." Fontaine Opp. at 4. The Amended Complaint, however, does not allege any facts to support an inference that the officers had a reason to mistrust the statements of the Harmonia staff or documents presented, and Wellington's reference in her opposition brief (but not her Amended Complaint) that the Harmonia staff presented a fabricated email is an insufficient basis because no facts are alleged to support that the officers had reason to know that false information was presented to them. *Guerrero*, 2013 WL 673872, at *4 (dismissing a Section 1983 false arrest claim when the pleadings "made no allegation — with regard to *either* arrest — that the arresting officers had reason to doubt the complaints leading to the [a]rrests").

Wellington also argues that probable cause did not exist because the District Attorney decided not to prosecute her for trespass. Opp. at 5. This fact is not alleged in the Amended Complaint, but even if it was, a District Attorney's decision to "decline to prosecute does not, without more, shed meaningful light on the arresting officer's probable cause." *Monahan v. City*

15

*of New York*, No. 20-cv-02610 (PKC), 2022 WL 954463, at \*16 (S.D.N.Y. Mar. 30, 2022) (collecting cases).  Accordingly, the Amended Complaint does not plausibly allege that Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, or Fontaine deprived Wellington of her Fourth Amendment rights through a false arrest.

### 2.        Excessive Force

Wellington's Section 1983 claim that Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine used excessive force when handcuffing her, *see* Am. Compl. ¶¶ 96-101, also fails because she does not adequately allege that the handcuffing was unreasonable under the circumstances.  A police officer is liable under an excessive force-based Section 1983 claim when the officer "employ[s] a degree of force beyond that which is warranted by the objective circumstances of an arrest."  *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individuals Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted).

"[E]xcessively tight handcuffing that causes injury can constitute excessive force in violation of the Fourth Amendment[.]"  *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015).  Courts consider three factors when "evaluating the reasonableness of a handcuffing: that '(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists.'"  *Cugini*, 941 F.3d at 612 (alterations in original) (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)).  Although the Second Circuit was reviewing a summary judgment motion decision in *Cugini*, "evidence of these factors has often been employed by . . . courts in this Circuit to determine whether a plaintiff has sufficiently alleged a claim for

16

excessive force in the process of handcuffing." *Cugini*, 941 F.3d at 612-613; *see id.* at 613 n.5 (collecting cases). While this test is a useful guide, the Second Circuit has cautioned that the reasonableness inquiry "is not limited to a factual checklist." *Id.* at 613. For example, a plaintiff "need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain" so long as the "officer reasonably should have known during handcuffing that his use of force was excessive." *Id.* Likewise, a plaintiff does not need to allege that she suffered "serious injury" from the handcuffing to state a claim for excessive force. *See Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150-51 (2d Cir. 2021); *accord Harvey v. Corneal*, No. 24-cv-07380 (JAV), 2025 WL 2345879, at *6 (S.D.N.Y. Aug. 13, 2025).

Here, Wellington does not plausibly allege facts that could support an excessive force claim. According to the Amended Complaint, the officers placed Wellington into handcuffs after she refused to be arrested and "sat down on the floor." Am. Compl. ¶¶ 49-50. She only began to comply when one of the officers demanded that she stand up, after which they "place[d]" her into handcuffs and led her to the police car. *Id.* ¶¶ 50-51. Placing secure handcuffs on an uncooperative alleged trespasser to gain compliance is not unreasonable per se. *Cf. Esmont*, 371 F. Supp. 2d at 214 ("Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out."). Wellington alleges only that she complained to Fontaine that the handcuffs were too tight, Am. Compl. ¶ 53, but does not allege facts that support a finding that the use of handcuffs to gain her compliance was unreasonable, that the handcuffs were causing her pain, that she was handcuffed for an extended period of time, or that the handcuffs caused her any injury, *cf. Harvey*, 2025 WL 2345879, at *6 (finding bilateral wrist pain with bruising and swelling was sufficient for a handcuffing-based excessive force claim at the pleading stage); *Moore v. City of New York*, No. 22-cv-10957 (LGS), 2024 WL 3361193, at *5 (S.D.N.Y. July

17

10, 2024) (considering allegations that the handcuffs "le[ft] marks and injuries on [p]laintiff's wrists" relevant to assessing the adequacy of the pleading); *Jimenez ex rel. J.M. v. Cnty. of Suffolk*, No. 23-cv-09476 (AMD) (RLM), 2025 WL 948348, at *15 (E.D.N.Y. Mar. 28, 2025) (finding handcuffing-based excessive force claim adequately pleaded when officers handcuffed plaintiffs for three hours, "the handcuffs were too tight," plaintiffs "complained to the officers," and the handcuffing injured one plaintiff's shoulder), even though the Court recognizes that "serious injury" is not required to maintain an excessive force claim, *see Ketcham*, 992 F.3d at 151.  Thus, Wellington does not plead sufficient facts to plausibly allege that Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, or Fontaine used excessive force when handcuffing her such that there was a violation of her Fourth Amendment rights.

### 3.    Failure to Intervene

Given that Wellington does not plausibly allege a Section 1983 claim for false arrest or excessive force, she also has not pleaded a claim for failure to intervene.  "A police officer 'has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.'" *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).  Failure to intervene requires that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y.

18

2008), *aff'd* 461 F. App'x 18 (2d Cir. 2012) (summary order).  "It is well established that absent an underlying constitutional violation, there can be no failure to intervene violation."  *King-Knight v. City of New York*, No. 23-cv-04648 (PKC), 2025 WL 950507, at *14 (S.D.N.Y. Mar. 28, 2025)) (quoting *Fincher v. City of New York*, 19-cv-06206 (MKV), 2021 WL 4461161, at *6 (S.D.N.Y. Sept. 29, 2021)); *see also Nelson v. City of New York*, No. 18-cv-04636 (PAE), 2019 WL 3779420, at *7 (S.D.N.Y. Aug. 9, 2019) ("A failure to intervene under § 1983 cannot prevail when there is no underlying constitutional violation."); *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order) (affirming a dismissal of a failure to intervene claim when the "underlying constitutional claims were properly dismissed").  Given that Plaintiff does not adequately allege a constitutional violation against Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, or Fontaine, there can be no failure to intervene violation, and those claims are dismissed.

### 4.    No Individualized Actions Pleaded

In addition to the foregoing, Plaintiff fails to state a claim against Jackson, LaGuardia, Villegasalmazo, and Mukhutdinov under Section 1983 because she does not adequately allege each officer's individual role in the alleged constitutional deprivations.  The Amended Complaint only alleges that officers LaGuardia, Villegasalmazo, and Mukhutdinov arrived at Harmonia, then stops identifying what each officer did.  *See* Am. Compl. ¶¶ 39-56.  The Amended Complaint does not even allege that Jackson arrived at Harmonia.  *See id.* ¶ 39.  The only officer whose conduct is clearly identified is Fontaine.  *See id.* ¶¶ 39-56.  The Amended Complaint's failure to identify each officer's role in the alleged false arrest or excessive force, as required to state a claim, is an alternative ground for dismissal of her Section 1983 claims against Jackson, LaGuardia, Villegasalmazo, and Mukhutdinov.  *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) ("[A] plaintiff must plead that each Government-official defendant,

19

through the official's own individual actions, has violated the Constitution." (quoting *Iqbal*, 556 U.S. at 676)).

### C.        Additional Claims Raised by Plaintiff in Opposing Fontaine's Motion

In her opposition to Fontaine's motion to dismiss, Wellington raised two additional claims that were not alleged in the Amended Complaint: (1) deprivation of her Fourteenth Amendment procedural due process rights, Fontaine Opp. at 5-6; and (2) malicious prosecution, *id.* at 6-7.  Fontaine asks the Court to disregard these claims because Wellington "clearly enumerated all of the claims she intended to bring," and considering these additional claims would not be consistent with those pleadings.  Fontaine Reply at 4.  "Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading." *Agapov v. UBIF Franchising Co.*, No. 23-cv-02178 (PMH), 2024 WL 5118408, at *3 n.6 (S.D.N.Y. Dec. 16, 2024); *accord Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014).  Here, the due process and malicious prosecution claims are not inconsistent with the facts alleged in the Amended Complaint, and thus the Court will consider these claims.

While it is not clear if Wellington intends to bring these claims only against Fontaine, or against all Individual Defendants, her additional claims fail either way.  Beginning with her due process claim, "[t]o prevail on this claim, the plaintiff must show that [she] 'possessed a protected liberty or property interest, and that [s]he was deprived of that interest without due process.'" *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001) (quoting *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998)); *accord Duncan v. Sullivan Cnty.*, No. 18-cv-09269 (VB), 2020 WL 1033064, at *8 (S.D.N.Y. Mar. 2, 2020).  Wellington argues that Defendants violated her procedural due process rights by evicting her and her children without "notice," a "hearing," or an "opportunity to contest."  Fontaine Opp. at 5-6.  As with all other

20

Section 1983 claims, a claim for procedural due process can only be sought against a state actor. *See, e.g.*, *Leary v. Civ. Serv. Emps. Ass'n*, No. 11-cv-00716 (CS), 2012 WL 1622611, at \*12 (S.D.N.Y. May 9, 2012) (finding defendant that was not acting under state law "c[ould] [not] be held liable for a purported procedural due process violation pursuant to Section 1983"), *aff'd sub nom. Leary v. Civ. Serv. Empls. Ass'n Region 3*, 516 F. App'x 42 (2d Cir. 2013) (summary order). Thus, to the extent that Wellington seeks to bring claims against Perlmutter, Mortimer, and Gore, a due process claim would fail because they are not state actors. *See supra* Part III.A. As for Jackson, LaGuardia, Villegasalmazo, Mukhutdinov, and Fontaine, Wellington does not allege that they had any involvement with her log-out. Accordingly, Wellington does not state a claim for a violation of her procedural due process rights.

Wellington's malicious prosecution claim fails for similar reasons. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (quoting *Manganiello*, 612 F.3d at 161). "Because lack of probable cause is an element of a malicious prosecution claim, 'the existence of probable cause is a complete defense to a claim of malicious prosecution.'" *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) (quoting *Manganiello*, 612 F.3d at 161-62). As discussed above, Perlmutter, Mortimer, and Gore were not state actors and thus cannot be liable under Section 1983 claim. As for Jackson, LaGuardia, Villegasalmazo,

21

Mukhutdinov, and Fontaine, the circumstances alleged in the Amended Complaint demonstrate that the officers had probable cause to arrest Wellington for trespassing. *Supra* Part III.B.1. Thus, Wellington cannot state a claim for malicious prosecution.

### D.    Federal Claims against New York City

Finally, the Amended Complaint does not plausibly state a Section 1983 claim against New York City. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities "can be sued directly under [Section] 1983" when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "[A] municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Id.* at 691; *accord Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). "To hold a [municipality] liable under [Section] 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente*, 980 F.3d at 297 (first alteration in original) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). "To satisfy the first prong of the test on a motion to dismiss, [a plaintiff] must allege the existence of: (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it 'amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.'" *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378,

22

388 (1989)).  Importantly, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

As a threshold matter, Wellington does not adequately plead a claim against the City because she fails to plausibly allege a deprivation of her constitutional rights.  *See supra* Part III.B; *Smith v. City of New York*, No. 15-cv-07910 (GHW), 2016 WL 7471334, at *5 (S.D.N.Y. Dec. 28, 2016) (dismissing *Monell* claims when the complaint "fail[ed] to plausibly allege a constitutional violation").  But even setting aside that the Amended Complaint does not adequately allege a deprivation of Wellington's constitutional rights, Wellington does not allege that the City had an "official policy or custom" that caused such a deprivation.  *Lucente*, 980 F.3d at 297.  The Amended Complaint only makes conclusory allegations that "[i]t was the custom and policy of the City . . . to inadequately supervise, train, retain, and hire employees."  Am. Compl. ¶ 80.  Moreover, the Amended Complaint only alleges facts regarding a single incident wherein Wellington was logged out and arrested.  "Proof of a single incident of unconstitutional activity," however, "is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

Wellington argues in a conclusory fashion in her brief that the City "has failed to adequately train or supervise the officers assigned to city shelters, particularly in recognizing the

23

rights of shelter residents and the limits of lawful arrest authority." Opp. at 6. She goes on to conclude that these "allegations are consistent with publicly reported abuses involving officers' using trespass arrests in shelters." *Id.* at 7. However, the Amended Complaint does not allege claims of systemic abuses, nor does Wellington allege any facts to support an inference that the City "deliberately ignored 'the risk that its employees would unconstitutionally apply its policies without more training.'" *Williams v. City of New York*, 690 F. Supp. 2d 338, 346 (S.D.N.Y. 2010) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 (2d Cir. 2004)).

Furthermore, the cases cited by Wellington do not warrant a different conclusion. First, as discussed earlier, some of her cited cases do not exist, or are wholly unrelated to the *Monell* claim presented here, such as *Diaz v. Consortium for Worker Educ., Inc.*, No. 10-cv-01848 (LAP), 2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) which is a FLSA case. The remaining cases that do reference *Monell* claims do not support denial of the motion to dismiss. For example, *Williams* permitted a *Monell* claim to survive when a letter signed by an official policymaker was included in the complaint, but dismissed other *Monell* claims that did not set forth specific allegations connecting the alleged conduct causing a constitutional deprivation to an official policymaker. 690 F. Supp. 2d at 344-45. Here, Wellington has not set forth any factual allegations connecting the alleged constitutional violations to an official policy maker and does not allege facts that the City's policymakers deliberately ignored "the risk that its employees would unconstitutionally apply its policies without more training." *Id.* at 344 (quoting *Amnesty Am.*, 361 F.3d at 130). Likewise, in both *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006) and *Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007), the courts determined that *Monell* claims could not survive summary judgment because the record lacked evidence supporting a municipal policy or custom that caused an alleged constitutional deprivation. *See Green*, 465 F.3d at 81 ("A reasonable jury could not find that evidence of one

24

instance in which emergency personnel were not familiar with the correct protocol constituted a practice 'so manifest as to imply the constructive acquiescence of senior policy-making officials.'" (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992))); *Jenkins*, 478 F.3d at 95 ("The mere fact that [plaintiff] was falsely arrested, without more, does not show that the City's training program is inadequate.  A training program is not inadequate merely because a few of its graduates deviate from what they were taught.").  These cases, therefore, *support* dismissal of the claim against the City here.

In sum, Wellington fails to adequately allege a *Monell* claim, because she fails to plausibly allege that a constitutional deprivation occurred, and, even if she did, she does not allege that a municipal custom or policy caused the deprivation. [5]

## IV.    State Law Claims and Supplemental Jurisdiction

As for the remaining state law claims, Defendants argue that the claims should be dismissed on the merits.  In the alternative, they assert that the Court should decline to exercise supplemental jurisdiction over these claims.  *See* Br. at 23-24; Fontaine Br. at 16-17.  28 U.S.C. § 1367 grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Section 1367(c) permits a court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension*

---

[5] Defendants also argue that the Court should dismiss the claims against the City because of *Rooker-Feldman* doctrine, *see* Br. at 6-9, but the Court need not reach this argument.

*Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ((quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003))); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (noting that courts "should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage").

Given that all of the federal law claims are dismissed, the balance of factors weighs in favor of declining supplemental jurisdiction over Wellington's remaining state law claims. First, judicial economy favors dismissal because this action has not progressed past the pleading stage. Second, refiling the action in state court imposes only a minor inconvenience on the parties. Third, proceeding in state court will not place any of the parties at a disadvantage relative to their current positions in the litigation. Lastly, "given that only state-law issues remain in this case, comity dictates that the Court decline to decide those disputes." *Corley v. Vance*, 365 F. Supp. 3d 407, 463 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order); *see also Block v. City Univ. of New York*, No. 23-cv-07715 (NGG) (VMS), 2025 WL 1114738, at *7 (E.D.N.Y. Apr. 15, 2025) ("[A]lthough this case raises no novel or unresolved issues of state law, principles of comity support the court's decision to have a state court adjudicate [plaintiff]'s purely state law claims."). Therefore, the Court declines to assert supplemental jurisdiction over the remaining state law claims.

## V.    Leave to Amend

At the end of both of her opposition briefs, Wellington briefly requests leave to amend if the Court dismisses claims contained in the Amended Complaint. Opp. at 15; Fontaine Opp. at 13-14. "While leave to amend a pleading shall be freely granted when justice so requires, amendment is not warranted in the case of, among other things, 'futility.'" *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted) (quoting *Foman v. Davis*,

26

371 U.S. 178, 182 (1962)), *rev'd and remanded on different grounds sub nom. City of Sherrill v. Oneida Indian Nation*, 544 U.S. 197 (2005).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)[.]"  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  "[A]mendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Oneida Indian Nation*, 337 F.3d at 168.

Wellington has already amended her complaint once and does not propose any additional factual allegations that she would include in a second amended complaint.  Indeed, even considering materials outside her pleading, such as her opposition brief and declarations submitted in support of her opposition, there are no facts presented that would support a non-futile amendment.  Moreover, the defects in Wellington's claims are substantive and could not be cured by better pleading, such as suing entities that cannot be sued in this court and individuals who were not acting under color of state law, as well as failing to allege constitutional violations or related customs or policies that could support either individual claims or municipal liability, respectively.  Thus, further amendment would be futile.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that when the problem in pleadings is "substantive," and "better pleading will not cure it," granting leave to amend "would . . . be futile"); *Cora v. Lebron*, No. 24-cv-00327 (AMD) (LB), 2024 WL 308244, at *3 (E.D.N.Y. Jan. 26, 2024) (denying leave to amend following a dismissal of a *pro se* litigant's complaint because defects identified in the motion to dismiss were "substantive").

## CONCLUSION

For the aforementioned reasons, the Court GRANTS the motions to dismiss as follows:

- All claims against the NYPD are dismissed with prejudice;

27

- The first, second, third, fourth, seventh, and eighth causes of action are dismissed, with prejudice, in their entirety;

- The fifteenth and sixteenth causes of action for "transitional homelessness" and "chronic homelessness" are dismissed with prejudice because they are not appropriate causes of action; and

- The Court declines to assert jurisdiction over the remaining state law claims and thus dismisses the fifth, sixth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and seventeenth state law causes of action, without prejudice.

The Clerk of the Court is respectfully directed to terminate the motions at Dkt. 45 and Dkt. 83 and close the case.

Dated: April 30, 2026
      New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge